THE RICHMOND. THE GEORGIA. COASTWISE S. S. CO. v. DICK.

(District Court, S. D. New York. July 15, 1903.)

1. COLLISION—STEAM VESSELS MEETING—VIOLATION OF PILOT RULES 1 AND 6.
    A tug with a barge in tow on her side and a steam yacht meeting in East river nearly head on, in the daytime, both *held* in fault for a collision for attempting to pass starboard and starboard, and in not signaling until when within 1,000 feet of each other, in violation of pilot rules 1 and 6, and in not sooner stopping and reversing when danger of collision appeared; the yacht being primarily in fault for initiating the improper signal, and for failure to promptly execute the maneuver when agreed upon.

In Admiralty. Cross-libels for collision.

Wheeler & Cortis, for E. R. Dick.
Butler, Notman, Joline & Mynderse, for the Coastwise Steamship Company.

124 F.—63

ADAMS, District Judge. These actions arose out of a collision which occurred on the Brooklyn side of the East River, a short distance above the Brooklyn Bridge, about 3 o'clock p. m. July 31, 1901, between the steam yacht Elsa, owned by E. R. Dick, and the barge Georgia, in tow of the tug Richmond, on the tug's port side. The barge and tug were owned by the Coastwise Steamship Company. The yacht was bound down the river, intending to go through the Buttermilk Channel, and the Richmond and the barge, the latter laden with about 3,000 tons of coal, were bound east. The tide was flood and it was a clear bright day. The yacht was going at the rate of about 7 miles per hour and the tug and barge, aided by the tide, about 5 miles. The Elsa was very slightly to the starboard of the tug and barge, but they were practically head and head and there was risk of collision if both vessels kept their courses. When they were less than a quarter of a mile apart, the yacht blew a signal of two whistles to the tug and starboarded her helm. The signal was not heard on the tug and two more two blast signals were blown by the yacht to her. One of these two, probably the first, was answered with a similar signal by the tug and she starboarded her helm and directed the barge to do likewise. The barge was large and unwieldy and did not respond quickly to the helm and such effect as it would have had was counteracted by the reversing of the tug's screw, which was ordered when a collision was imminent. The collision, however, could not be avoided and the barge's starboard bow, which projected ahead of the tug about 75 feet, came in contact with the yacht's starboard side, abaft amidships, and some injury was done to both vessels.

I find that the yacht was primarily in fault for the collision for initiating a two whistle starboard to starboard course, when the rule required that they should take a one whistle port to port course. The yacht claims that there was no room for her on the Manhattan side, because of the presence of numerous vessels there, yet she crowded the tug and barge and expected them to find room, though they occupied a space of 75 or 80 feet in the water, while she only had a beam of 23½ feet. I find that there was in fact plenty of room for the vessels to manœuvre according to rule. She was also in fault for failing to exert the necessary vigilance in carrying out the manœuvre she initiated. The situation required an almost immediate hard-a-starboard helm on her part, whereas it was not so put until the vessels were close together and then the effect was to throw the yacht's stern to the starboard and against the bow of the barge. She was also in fault for giving her signals to the tug too late, admittedly not until the vessels were within a quarter of a mile of each other. The tug claims that the distance between them when the tug answered was 600 or 700 feet. As this was probably the second signal, the first was doubtless given when the vessels were not more than 1,000 feet apart, instead of a half of a mile as required by Pilot Rule 6. She was also in fault for not stopping and reversing when danger of collision appeared.

I must also hold the tug in fault. She paid no attention to the yacht until the vessels were within 1,000 feet of each other and approaching at the respective rates of 7 and 5 miles, or at a combined

rate of about 12 miles per hour, so that they were, when the yacht was observed on the tug, within less than a minute of collision. The navigator of the tug, concluding from the yacht's appearance that she was a high speed and easily manœuvred vessel, evidently expected that the yacht would exert her supposed powers to keep out of the way of the tug and barge, and left it to her to adopt a course of navigation for that purpose. The yacht adopted an improper course and executed the manœuvres to carry it out poorly, but that afforded no excuse to the tug for her omission of duty. She should have seen the yacht before and signalled to her in conformity with the rule and in the absence of proper action on the part of the yacht, should have blown danger signals and stopped and reversed. The tug was not a privileged vessel.

The case is one of negligent navigation on the part of both vessels and both must be held. Decrees accordingly, with orders of reference.